******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JERZY G.*
(AC 36586)

Gruendel, Mullins and Solomon, Js.

*Argued September 17—officially released December 29, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Iannotti, J. [accelerated rehabilitation
application]; Arnold, J. [motion to dismiss; termination
of accelerated rehabilitation order].)

*Kelly Billings*, deputy assistant public defender, with
whom was *James B. Streeto*, senior assistant public
defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's
attorney, *Marc R. Durso*, assistant state's attorney, and
*Tiffany M. Lockshier*, senior assistant state's attorney,

for the appellee (state).

*Opinion*

SOLOMON, J. General Statutes § 54-56e[1] establishes a pretrial diversionary program known as accelerated rehabilitation that permits a trial court, in its discretion, to suspend criminal prosecution for certain offenses against a defendant, subject to such conditions as the court shall order. *State* v. *Callahan*, 108 Conn. App. 605, 607, 949 A.2d 513, cert. denied, 289 Conn. 916, 957 A.2d 879 (2008). The defendant, Jerzy G., applied for and was granted admission into the state's accelerated rehabilitation program in connection with the charge of sexual assault in the fourth degree in violation of General Statutes § 53a-73a.[2] Subsequently, the defendant was deported to Poland, and the trial court terminated his participation in the program. The defendant appeals from the judgment of the trial court terminating his participation in the program,[3] claiming that the court abused its discretion by (1) denying his motion to dismiss, and (2) refusing to continue the case until he could return to the state and complete the program. We dismiss the appeal as moot.

The following facts and procedural history are relevant to this appeal. In January, 2010, the defendant, a Polish national, resided at the home of the victim. The victim previously was married to a friend of the defendant, and the victim had no romantic involvement with the defendant. On January 10, 2010, the defendant allegedly approached the victim while she was standing in the kitchen and touched her on her buttocks and breasts. The victim called the police, and the defendant was arrested and charged with one count of sexual assault in the fourth degree.

In March, 2012, the defendant filed an application for accelerated pretrial rehabilitation. A hearing was held on this application on April 20, 2012. At the conclusion of the hearing, the court, *Iannotti, J.*, granted the defendant's application and imposed a period of probation of two years with the following conditions: (1) the defendant was not to contact the victim; (2) the defendant was to undergo mental health evaluation and treatment as deemed necessary; (3) the defendant was to undergo substance abuse evaluation and treatment, specific for alcohol abuse, as deemed necessary; and (4) the defendant was to seek and maintain full-time employment. The prosecutor informed the court at the hearing that she had been in contact with representatives of the United States Immigration and Customs Enforcement (ICE) agency, who told her that the defendant had overstayed his visa. The prosecutor also informed the court that ICE represented to her that deportation proceedings against the defendant would commence if he were to be convicted, but that it was unclear what would happen if he was not convicted.

In November, 2013, the Office of Adult Probation

notified the court that the defendant was deported to Poland on August 16, 2012. The notice stated that the defendant had not satisfactorily completed his probationary period, and requested that the court terminate his participation in the program. A hearing was held on November 22, 2013, at which time the defendant moved to dismiss the sexual assault charge on the ground of successful completion of accelerated rehabilitation. The court, *Arnold, J.*, denied the defendant's motion, terminated the defendant's participation in the program, and ordered the defendant to be rearrested. At a subsequent hearing on the defendant's application for a waiver of fees, costs, and expenses, and appointment of counsel in connection with the present appeal, defense counsel confirmed that the defendant in fact had been deported to Poland. Defense counsel also represented to the court that she did not know the reason for his deportation. The court granted the defendant's application for a waiver of fees and this appeal followed.

The court explained its reasons for terminating accelerated rehabilitation in a memorandum of decision issued on September 10, 2014. In this memorandum, the court stated that it terminated accelerated rehabilitation because it found that the defendant had failed to complete the program successfully. The court emphasized that, in light of the deportation of the defendant to Poland, the Office of Adult Probation was unable to monitor whether he was in compliance with the court's conditions, and that compliance with these conditions was necessary to determine if the defendant was entitled to a dismissal on the basis of successful completion. Ultimately, the court explained that because the defendant did not prove compliance with the imposed conditions, and because he could not be monitored in Poland, the court found that he failed to complete the program successfully and terminated his participation therein accordingly.

On appeal, the defendant claims that the trial court's termination of his participation in the program constituted an abuse of discretion. Specifically, he argues that the court either should have dismissed the charge against him or continued the matter until he could reenter the country and complete the program. The state objects, arguing that the appeal is moot because the defendant was deported at least in part for reasons unrelated to the present case. We agree with the state.

"Under our well established jurisprudence, [m]ootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . In other words, the ultimate question is whether the determina-

tion of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 691, 899 A.2d 586 (2006). "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve." (Internal quotation marks omitted.) *Bornemann* v. *Connecticut Siting Council*, 287 Conn. 177, 181, 947 A.2d 302 (2008).

The state relies on *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006), in support of its mootness position. Because we agree with the state that *Aquino* is controlling and dispositive of the present appeal, we discuss *Aquino* and its progeny first. The defendant in *Aquino* was residing illegally in the United States when he pleaded guilty to several crimes. He subsequently moved to withdraw his guilty plea on the ground that it was not knowingly and voluntarily made because his attorney failed to advise him of the immigration consequences of his plea. The motion to withdraw was denied, and the defendant appealed. During the pendency of the appeal, the defendant was deported. This court ruled that, notwithstanding the defendant's deportation, his appeal was not moot because his guilty plea would gravely impair his ability to petition for naturalization. *State* v. *Aquino*, 89 Conn. App. 395, 400–401, 873 A.2d 1075 (2005), rev'd, 279 Conn. 293, 901 A.2d 1194 (2006). Our Supreme Court disagreed and reversed: "We conclude that, in the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot." *State* v. *Aquino*, supra, 279 Conn. 298. The court observed: "The defendant did not produce any evidence at the hearing on his motion to withdraw his guilty plea—indeed, he did not even claim—that he would be deported solely as the result of his guilty plea. While this appeal was pending, the defendant was deported. There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory." (Footnote omitted.) Id.

This court consistently has followed *Aquino* in subsequent cases. The defendant in *State* v. *Chavarro*, 130 Conn. App. 12, 21 A.3d 541 (2011), a Colombian national, was granted permission to live in the United States until June 22, 1998. He remained in the country past this date illegally. Several years later, he was arrested, pleaded guilty to possession of marijuana with intent to sell, and was sentenced to three years of probation. After being sentenced, the defendant was notified by the United States Department of Homeland Security that it had commenced removal proceedings against him because (1) he remained in the United States illegally after June 22, 1998, and (2) he was convicted of possession of marijuana with intent to sell. The United States

Immigration Court thereafter ordered the defendant deported to Colombia, although the deportation order did not set forth the basis for the court's decision. After an unsuccessful attempt to withdraw his guilty plea, the defendant appealed to this court. This court held that *Aquino* was controlling and dismissed the appeal as moot, reasoning: "As the record indicates, the defendant was subject to deportation for two reasons: (1) his illegal immigration status; and (2) his conviction for possession of marijuana with intent to sell. The immigration court, however, did not set forth in its order the reason, or reasons, for the defendant's deportation. Furthermore, the defendant has failed to produce any evidence from which it could be determined on what basis the court ordered the defendant deported. Consequently, we are unable to discern whether the defendant was deported because of his illegal immigration status, his conviction or both. Therefore, because the defendant has failed to establish that his deportation was the result of his guilty plea alone . . . we are unable to provide the defendant with any practical relief and, accordingly, the appeal is moot." (Citation omitted; internal quotation marks omitted.) Id., 17–18.

In *Quiroga* v. *Commissioner of Correction*, 149 Conn. App. 168, 87 A.3d 1171, cert. denied, 311 Conn. 950, 91 A.3d 462 (2014), the petitioner, a citizen of Uruguay, was a permanent resident of the United States. The petitioner was convicted of larceny following a plea of nolo contendere and served time in jail. The petitioner later brought a petition for a writ of habeas corpus, claiming that his trial counsel's failure to apprise him of the fact that his larceny plea could result in deportation constituted ineffective assistance of counsel. The petitioner appealed from the habeas court's denial of his petition, but was deported during the pendency of the appeal. This court held that the appeal was moot: "There is no evidence in the record before us that the petitioner's guilty plea to larceny in the first degree was the *sole* reason for his deportation. To the contrary, the immigration judge specifically found that removability on the ground of the petitioner's possession of narcotics convictions had been established by clear and convincing evidence." (Emphasis in original; internal quotation marks omitted.) Id., 173. The petitioner argued that his larceny conviction was the primary reason for his deportation and that, in the absence of that conviction, he would have been eligible for possible discretionary cancellation of removal. The court rejected this argument, reasoning that "[i]t nevertheless remains that *Aquino* requires proof that the larceny plea was the *exclusive basis* of the petitioner's deportation, rather than a primary or likely one." (Emphasis added.) Id., 174.

In sum, the rule of *Aquino* and its progeny is that an appeal of a deported appellant is moot if the appellant fails to prove that the unfavorable judgment that is the

subject of the appeal was the exclusive basis of his or her deportation. *State* v. *Aquino*, supra, 279 Conn. 298–99. Applying these principles to the present case, we conclude that the defendant failed to prove that the court's termination of accelerated rehabilitation was the exclusive basis of his deportation and, therefore, that his appeal is moot. During the hearing on the defendant's application for accelerated rehabilitation, the prosecutor notified the court that ICE had made it clear that the defendant had overstayed his visa and was at risk for deportation. At the hearing on the defendant's application for a waiver of fees in connection with this appeal, defense counsel represented to the court that she did not know why the defendant was deported. Additionally, and in response to questions posed during oral argument before this court, defense counsel conceded that the defendant's visa overstay was the only justification for his deportation ever presented to her. Finally, the defendant's reply brief states that "unlike *Aquino* and its progeny, the reason for the defendant's deportation is clear from the record—visa overstay." Unlike in *Chavarro*, where this court noted that it was "unable to discern whether the defendant was deported because of his illegal immigration status, his conviction or both"; *State* v. *Chavarro*, supra, 130 Conn. App. 17; there is no dispute in the present case that the defendant was deported at least in part for reasons unrelated to these criminal proceedings. Moreover, there is no dispute that the court terminated the defendant's participation in the program *after* the defendant was deported. In light of this evidence, we conclude that the defendant failed to demonstrate that he was deported solely on the basis of the court's termination of his participation in the accelerated rehabilitation program. Consequently, because the defendant was deported at least in part for reasons independent of his termination from the program, this court is unable to afford him any practical relief[4] and any opinion rendered by this court would be purely advisory. See *State* v. *Aquino*, supra, 279 Conn. 298.

The defendant nevertheless argues that this appeal is not moot because the collateral consequences exception to the mootness doctrine applies. "[U]nder this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur." (Internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 382, 944 A.2d 276 (2008). "[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these conse-

quences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006).

With respect to collateral consequences, the defendant argues that the termination of his participation in accelerated rehabilitation "may well prevent [him] from ever re-entering the United States, visiting the United States, working in the United States, or seeking naturalization as a United States citizen." A similar claim was made and rejected in *Aquino*. In *Aquino*, this court held that the defendant's appeal was not moot because his guilty plea would have collateral consequences implicating his ability to petition for naturalization. Our Supreme Court disagreed, reasoning that "[j]ust as there is no evidence in the record before us establishing the reason for the defendant's deportation . . . there is [also] no evidence to suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen." *State* v. *Aquino*, supra, 279 Conn. 298–99 n.3. Likewise, the defendant in the present case has failed to produce any evidence to establish that, in the absence of the court's termination of accelerated rehabilitation, he would be allowed to reenter, visit, or naturalize.[5] In the absence of any evidence that the defendant would not be allowed to reenter this country or become a citizen, we conclude that the defendant's claimed collateral consequences are merely conjectural.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 54-56e provides in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes . . . for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature. . . .

"(b) The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime . . . and (3) who states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under the penalties of perjury, (A) that the defendant has never had such program invoked on the defendant's behalf . . . provided the defendant shall agree thereto and provided notice has been given by the defendant . . . to the victim or victims of such crime . . . if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. . . . No defendant shall be allowed to participate in the pretrial program for accelerated rehabilitation more than two times. . . .

"(d) Except as provided in subsection (e) of this section, any defendant who enters such program shall pay to the court a participation fee of one

hundred dollars. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime and to a waiver of the right to a speedy trial. Any such defendant shall appear in court and shall, under such conditions as the court shall order, be released to the custody of the Court Support Services Division . . . . If the defendant refuses to accept, or, having accepted, violates such conditions, the defendant's case shall be brought to trial. The period of such probation or supervision, or both, shall not exceed two years. . . ."

[2] General Statutes § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ."

[3] "An order of the court . . . terminating the participation of a defendant in [the accelerated rehabilitation] program shall be a final judgment for purposes of appeal." General Statutes § 54-56e (f).

[4] The defendant attempts to distinguish *Aquino* and the cases following it, arguing that those cases involved either pleas of guilty or nolo contendere, whereas the defendant in the present case did not plead at all but instead voluntarily entered into a pretrial diversionary program. The nature of a defendant's response to criminal charges has never been the focal point of the analysis in our jurisprudence concerning the justiciability of a deportee's appeal. Rather, our courts have focused on the availability of practical relief.

[5] In fact, defense counsel represented to the court that there is no evidence that the defendant even wishes to return to the United States. The only indication of the defendant's intention in this regard is found in his statement to the court when he applied for accelerated rehabilitation that he wanted to return to Poland.